EDMUND T. JONES ET AL., EXECUTORS, *v.* JOHN E. BURGESS ET AL, EXECUTORS.

[No. 36, January Term, 1939.]

*Decided February 22nd, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*N. Irvin Gressitt,* for the appellants.

*J. Wallace Bryan,* for the appellees.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City over-ruling a demurrer to appellees' amended bill of complaint. By that order, the chancellor determined that, under the facts alleged, liability existed on the part of a mortgagee of certain leasehold property to the owner of the reversionary interest for certain ground rent overdue, and for taxes and minor privilege charges paid by the owner of the ground rent, which items accrued while the mortgage remained in default and un-released.

The allegations of the amended bill justify the statement that Lily Early Burgess, late of Baltimore City, departed this life on February 17th, 1935, and, by her last will and testament, duly probated, disposed of her real and personal property and appointed as executors of her will John E. Burgess and the Safe Deposit and Trust Company, who have qualified as such.

Alice J. Jones, the defendant in the original bill, filed October 28th, 1935, died on May 20th, 1938, testate. Her will was duly probated and letters testamentary upon her estate were granted unto Edmund T. Jones and N. Irvin Gressitt, the executors named therein, who have duly qualified and are named as defendants in the amended bill.

On November 28th. 1857, Henry Rieman *et al.* created a renewable ninety-nine year ground rent upon certain property known as No. 13 West Pratt Street, Baltimore City. That lease was in usual form and duly recorded. It reserved an annual rent of $550, payable in equal semi-annual installments of $275 each, on the 10th days of April and October of each and every year "over and above all deductions for taxes and assessments of every kind levied or assessed, or to be levied or assessed on said premises, or the rent issuing therefrom," and therein the lessees covenanted for themselves, their personal representatives and assigns, "to pay the aforesaid rent, taxes and assessments when legally demandable."

Prior to January 1st, 1920, the reversion of and ground

rent on the property had become vested in Mrs. Burgess, who held title thereto until her death. By the residuary clause in her will, those interests passed to her son, John E. Burgess, but the items claimed in this suit matured in his mother's lifetime.

On December 22nd, 1919, the leasehold interest in the property was assigned to the Baltimore Candy and Tobacco Company, which corporation, on September 10th, 1920, executed to Mrs. Jones a mortgage to secure a loan of $15,000 made by her to that company. That loan was to mature three years from date, with the privilege to the mortgagor to renew the mortgage for an additional term of two years. In the mortgage Mrs. Jones is described as "life tenant under the last will and testament of Thomas L. Jones, deceased, dated August 18, 1903." Professedly, the mortgage was executed "for the purposes and subject to the conditions set forth in said last will and testament." It assigned the property to the mortgagee "for all the residue of the term of years yet to come and unexpired therein * * * subject to the payment of said annual ground rent of $550, and contained the usual covenant of redemise. In addition to the leasehold property above referred to, other property owned by the mortgagor was included in the mortgage, which mortgage Mrs. Jones held until May 16th, 1934, when it was released. Mrs. Jones accepted the mortgage for her personal and exclusive benefit, and collected and applied to her own use the entire interest paid thereunder from the date of its execution until its release.

The principal of the mortgage was not paid at maturity, and was in default from and after September 10th, 1925. Additional defaults occurred in 1933 and 1934 as follows; Taxes due the State of Maryland and Baltimore City, likewise minor privilege charges due Baltimore City for said years and ground rent to April 10th, 1934, of $275, making a total of $2278.41. Demand for the payment of those amounts was made upon Mrs. Jones in her lifetime, and after her death upon her executors, but none of said sums have ever been paid and, although the

taxes and minor privilege charges upon the property, with interest and penalties, for the years 1933 and 1934, were due at the time the original bill was filed, they had not then been paid by the plaintiffs, but on July 21st, 1937, the plaintiffs actually paid to the Mayor and City Council of Baltimore the whole of said taxes, minor privilege charges, interest and penalties, amounting in the aggregate to $2003.41.

The mortgage upon the Pratt Street property having been released May 16th, 1934, Mrs. Burgess' executors, on October 28th, 1935, filed their original bill in the Circuit Court of Baltimore City against Mrs. Jones to enforce payment of said sums. Promptly thereafter, the defendant filed a combined demurrer and answer to the bill, and, according to the record, no further proceedings were had by either of the parties to the cause until June, 1936, when, after hearing counsel, the chancellor sustained the demurrer to the bill, with leave to file an amended bill in twenty days. Subsequently, the present amended bill was filed, and, with respect to the items heretofore mentioned, which were sought to be recovered in the original bill, an accounting was sought to determine the exact amounts of such items, with interest and penalties, for which the defendant's estate was liable, and a decree against appellants to pay the sum so ascertained to the plaintiffs.

The mortgage against the leasehold property having been released before recourse was sought against the mortgagee, whose mortgage was in default, for collection of the items of rent and taxes accruing during the period of default in the mortgage, it is not disputed that equity was the proper forum. *Williams v. Safe Deposit & Trust Co.*, 167 Md. 499, 175 A. 331; *Hart v. Home Owners' Loan Corp.*, 169 Md. 446, 182 A. 322. Nor is any contention made that the mortgagee of a leasehold estate is not ordinarily responsible for the payment of taxes which accrue against the property while the mortgage is in default; nor that in such a case the owner of the reversionary interest, who pays such taxes, may not recover the amount

thereof from the mortgagee, in a suit at law, if the mortgage is outstanding, and, if released, may recover in equity. *Williams v. Safe Deposit & Trust Co., supra; Mayhew v. Hardesty* 8 Md. 479; *Lester v. Hardesty,* 29 Md. 50; *Duval v. Becker,* 81 Md. 537, 32 A. 308; *Baltimore City v. Peat,* 93 Md. 696, 50 A. 152, 698; *Worthington v. Cooke,* 52 Md. 297; *Donelson v. Polk,* 64 Md. 501, 2 A. 824; and *Hart v. Home Owners' Loan Corp., supra.*

But it is insisted, in support of the demurrer, that the ordinary rule respecting liability can have no application in the present case for several reasons, principal among which are: (1) Limitations; (2) laches; (3) that Mrs. Jones was under no personal liability to pay the claims in question; (4) that, in any event, the suit cannot be maintained for taxes and minor privilege charges, because those items had not been paid by appellees at the time of the filing of the original bill, and their subsequent payment prior to filing the amended bill is unavailing, because not brought forward by supplemental bill. Those contentions will be considered in the order last above named.

1. As to the contention that limitations is a defense to the present suit, it should be kept in mind that liability in cases of this character is predicated upon the facts that the mortgage of the entire interest in the original lease operates as an assignment thereof, the mortgagee as assignee becoming liable on the covenants of the lease running with the land which arise from privity of estate; but, since in the present case the assignment contains a provision that the mortgagor shall retain possession of the property until default, liability of the mortgagee did not arise until default had occurred under the mortgage. *Williams v. Safe Deposit & Trust Co.,* 167 Md. 499, 175 A. 331. As was said by Judge Offutt, speaking for this court, in *Hart v. Home Owners' Loan Corp.,* 169 Md. 446, 182 A. 322, 323, "it has long been the settled law of this state that the holder of a mortgage on leasehold property is, where the mortgage contains no provisions for a redemise, and, from the date of any default by the mort-

gagor in the covenants of the mortgage where it does contain such a provision, bound by all the covenants in the lease which run with the land including covenants to pay rent and taxes." See also *Union Trust Co. v. Rosenburg,* 171 Md. 409, 189 A. 421, and *Williams v. Safe Deposit & Trust Co. supra.* It is therefore clear that the remedy against the mortgagee as assignee, for breach of covenants running with the land, such as rent and taxes, accruing after default under the mortgage, is enforceable by an action at law unless the mortgage upon the leasehold estate has been released or assigned, in which case the remedy is in equity, because by either the release of the mortgage or its assignment the privity of estate no longer exists. *Williams v. Safe Deposit & Trust Co., supra,* and cases there cited; *Hart v. Home Owners' Loan Corp., supra; Union Trust Co. v. Rosenburg, supra.* But in an action at law upon the covenants, the period of limitations is twelve years. Code, art. 57, sec. 3; *Citizens Nat. Bank v. Custis,* 153 Md. 235, 241, 138 A. 261; *Marshall v. Marshall,* 164 Md. 107, 114, 163 A. 874; *Kaliopulus v. Lumm,* 155 Md. 30, 40, 141 A. 440; *Earnshaw v. Stewart,* 64 Md. 513, 516, 2 A. 734. It is generally held that in obedience to this and other applicable sections of the article, equity follows the law in applying, according to the facts in each case, the proper period of limitations. *Miller's Equity Procedure,* secs. 548, 549; *Pomeroy's Equity Jurisprudence,* sec. 419; *Knight v. Brawner,* 14 Md. 1; *Weaver v. Leiman,* 52 Md. 708, 709; *Insolvent Estate of Leiman,* 32 Md. 225, 3 Am. Rep. 132; *Hagerty v. Mann,* 56 Md. 522, 523. See, also, *Farmers Banking & Trust Co. v. Bender,* 175 Md. 625, 3 A. 2nd 743. No good reason would, therefore, seem to exist for the view that, since, in an action at law on the claim here sued upon, the period of limitations would be twelve years, a shorter time would prevail in equity, it having been specifically held in *Outtoun v. Dulin,* 72 Md. 536, 20 A. 134, that an assignee of the reversion at the time rent became due could sue on the covenants of the lease for its recovery.

But if it were conceded that the claim is barred by the

statute of limitations after three years (Code [Supp. 1935], art. 57, sec. 1), appellants are, we think, in no better position, because the original bill was filed October 28th, 1935, by Mrs. Burgess' executors, who are the same parties in the amended bill, and the causes of action in the original and amended bills are the same. The first bill was filed less than two years from the time the mortgage was released, and less than three years after the ground rent sued for had accrued on April 10th, 1934, and after the 1933 and 1934 taxes and minor privileges charges were due, and it would scarcely be contended that the first suit did not toll the running of the statute.

2. It is argued that appellees' laches in prosecuting the suit is a bar to its maintenance. It is true that a period of slightly more than two and one-half years elapse between the time the original bill of complaint and answer had been filed, and the date on which the demurrer was passed upon, but if we assume such action was had promptly upon argument, the chancellor's observation that the inaction was as much chargeable to appellants as to appellees is not without force, since either of the parties could have had the demurrer disposed of promptly. However, it seems sufficient to say that no contention is or could successfully be made that appellants have in any manner been prejudiced by the delay. While the application of the doctrine of laches is dependent upon the facts of each case, mere lapse of time, without more, unless sufficient in duration to constitute the bar of the statute of limitations, will not avail. 2 *Perry on Trusts*, secs. 855, 855a and 856; 4 *Bogert on Trusts & Trustees*, sec. 949. See, also, *Demuth v. Old Town Bank*, 85 Md. 315, 37 A. 266; *McInnes v. McInnes*, 163 Md. 303, 163 A. 85. And compare *Roberto v. Catino*, 140 Md. 38, 116 A. 873; *Weber v. Bien*, 143 Md. 561, 123 A. 52; and *Mays v. Mays, Admr.*, 176 Md. 159, 4 A. 2nd. 121. And unless some unusual conditions or extraordinary circumstances are alleged, making it inequitable for the suit to be prosecuted within a shorter time than the statutory period, a mere delay less than the time fixed by the analogous statute of

limitations will not necessarily bar the suit in equity. *Kaliopulus v. Lumm*, 155 Md. 30, 141 A. 440; *Pomeroy's Equity Jurisprudence*, sec. 1441. In the present case, the facts are undisputed and are entirely matters of record. For that reason defendant's death could not have placed appellants at any disadvantage in producing their defense, which in no way at any time depended upon facts within the knowledge of their decedent.

Notwithstanding the remedy is in equity for collection of the amounts sued for, the claim is essentially legal in nature, and while the fact that it is not barred by limitations is a defense independent of laches, no intervening equities are presented justifying relaxation of the general rule above announced.

3. Did Mrs. Jones become individually responsible for payment of the claims sued upon? Reference has previously been made to certain allegations of the bill, in effect charging that the mortgage loan was for her personal and exclusive benefit; further that she collected and applied to her own use the entire interest paid thereunder from the execution of the mortgage on September 10th, 1920, until its release on May 14th, 1934, a period of almost fourteen years. But it is insisted that she thereby incurred no personal liability to the reversioner for the items sued upon, although they became due after the mortgage was in default and prior to its release, because, argue appellants, she was acting as trustee under the power contained in the will of her late husband and could incur no individual responsibility in the transaction. In reply to this contention appellees assert two propositions: (a) That she was not acting as trustee, but for herself and in her individual capacity; (b) that even if she is to be regarded as trustee, she nevertheless became personally liable on covenants to which she became a party, in the absence of an express or implied agreement on the part of the other party to such covenant to waive her personal responsibility and rely upon the responsibility of the trust fund alone. They argue further that no such agreement exists in the present case.

In support of the view that a party to a covenant who describes himself as trustee is personally liable, much reliance is placed upon the cases of *Gill v. Carmine,* 55 Md. 339, and *Knipp v. Bagby,* 126 Md. 461, 95 A. 60. In our judgment, those decisions fully sustain the principle contended for. See, also, 65 *C. J.,* pp. 703, 704; 26 *R. C. L.,* pp. 1316-1318; 1 *Williston on Contracts* (Rev. Ed), sec. 312, p. 911 *et seq.*; *Taylor v. Mayo,* 110 U. S. 330, 4 S. Ct. 147, 28 L. Ed. 163; *Restatement of the Law, "Trusts,"* p. 810 *et seq.*; 3 *Bogert, Trusts and Trustees,* sec. 712. From the last cited authority, we quote:

"Assuming that a contract made by a trustee is within his powers, express or implied, it is generally held that the trustee is personally liable upon such a contract. He can be sued upon it as an individual and not as a representative. It is not necessary to add the words 'as trustee' to his name as a defendant, and their use in such a way is surplusage. A judgment against him is collectible out of his private property and not out of the trust property. A suit against him 'as trustee' at law will not enable the plaintiff to collect from the trust estate. Suits against him 'as trustee' in equity are considered at a later point. The creditor upon the trustee's contract has no power to sue the *cestui* at law, or to pay himself by self-help from trust property which the creditor may have in his hands.

"The reasons for this attitude of the courts are well known. The trustee is the only legal entity who promised to perform the contract. The trust is not a legal person nor is the trust property. The beneficiary was not a party to the contract. And the trustee is not an agent for him. The trustee does not purport in the ordinary case to sign for the *cestui,* or to bind the *cestui's* property for the performance of the obligation. The trustee is himself a principal and the only person whom the court of law recognizes as an obligor on the contract."

The present case is devoid of the slightest circumstance from which it could be inferred that appellees or their decedent agreed to release Mrs. Jones from the personal

liability she would normally have incurred by reason of being mortgagee of the leasehold interest in the property. Indeed, the circumstances negative any such idea, when it is recalled that the mortgage transaction was between the Baltimore Candy and Tobacco Company as mortgagor and Mrs. Jones as mortgagee. Mrs. Burgess was not a party to that arrangement, and certainly no understanding between the mortgagor and mortgagee as to Mrs. Jones' liability on the covenants could have bound Mrs. Burgess. In that respect the present case differs materially from the facts considered in *Glenn v. Allison,* 58 Md. 527, and *Boyle v. Rider,* 136 Md. 286, 110 A. 524, in both of which cases the court found as a fact that the party seeking to hold the trustee personally liable had agreed when the transaction was entered into that the trustee should not be so held.

This view respecting personal liability of a trustee under his contracts *intra vires* is in full accord with the principle adopted by our predecessors in the earlier case of *Gill v. Carmine, supra,* which was expressly reaffirmed in the more recent case of *Knipp v. Bagby, supra,* and is sustained by the great weight of authority throughout the country. However, in so holding, we are not to be understood as deciding that in taking the mortgage upon the property as life tenant, under the provisions of the will of Thomas L. Jones, Mrs. Jones was thereby acting as trustee, for, in view of what has been said, it becomes unnecessary to pass upon that question. However, it may be observed that if, in accepting the mortgage, she acted upon her individual responsibility, her personal liability, and, therefore, the liability of appellants to appellees, is, under the circumstances, free from doubt.

4. This brings us to the final contention that the demurrer is fatal to appellees' claims for taxes and minor privilege charges for the years 1933 and 1934, because those items, although claimed in the original as well as amended bills, were not actually paid by appellees until July 21st, 1937, between the dates when the bills were filed. It is argued that their inclusion in the amended bill

constitutes addition of new matter and violates a recognized rule of equity pleading requiring a supplemental bill. In support of that contention, we are referred to *Miller's Equity Procedure*, sec. 187.

The demurrer was to the amended bill as a whole and to each and every paragraph, but appellees' claim for the taxes, minor privilege charges, and ground rent, is included in the same paragraph of the amended bill, and in view of our holding with respect to personal liability, it is practically conceded that the suit is maintainable for the rent. Assuming, then, that the contention is sound, it is difficult to realize how it may in any way affect the ruling on demurrer, although it would have a bearing upon the amount decreed to be paid by appellants. But we do not regard the allegation in the amended bill to the effect that such charges were paid previous to its filing and subsequent to the original bill as equivalent to introducing new matter, as that term is generally understood. The mortgage held by Mrs. Jones contained the usual covenant of redemise, and, by reason of default thereunder, she as assignee became bound by covenants in the lease to pay the taxes and rent, the mortgage being unreleased at the time they became due. Appellees' right to maintain the suit is not dependent upon their paying the taxes and minor privilege charges which the mortgagor had failed to pay, but rather upon the default of the mortgagor in failing to discharge the same, and it is here alleged that demand for their payment was made upon the mortgagee, who refused to comply therewith, prior to the institution of the suit. In view of these considerations, no rule of equity pleading is violated by alleging in the amended bill that those amounts were paid by the appellees.

We have treated taxes and minor privilege charges as in the same status only because they were so considered by the parties to the cause, both in the court where the case originated, as well as in this court, but are not thereby to be understood as deciding that such minor privilege charges are *per se* liens against the property.

It follows that the order of the chancellor, over-ruling appellants' demurrer with leave to answer, was correct and must be affirmed.

> *Order affirmed, with costs, and cause remanded.*